UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| HENRY G.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:22-cv-00133-MPB-MJD |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Claimant Henry G. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. Judge Matthew P. Brookman has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 14.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Court **REVERSE** and **REMAND** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB and SSI in April 2020, alleging an onset of disability as of April 7, 2020. [Dkt. 5-2 at 31.] Claimant's applications were denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Stuart Janney ("ALJ") on November 8, 2021. [Dkt. 5-2 at 29.] On November 29, 2021, ALJ Janney issued his determination that Claimant was not disabled. *Id.* at 43. The Appeals Council then denied Claimant's request for review on July 29, 2022. *Id.* at 5-2 at 2. Claimant timely filed his Complaint on August 25, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then he need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, he "must provide a 'logical bridge' between the evidence and his conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III.  ALJ Decision

ALJ Janney first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of April 7, 2020. [Dkt. 5-2 at 31.] At step two, the ALJ found that Claimant had the following severe impairments: "right hip fracture and degenerative arthropathy of the bilateral hips; right knee osteopenia and arthropathy; and right ear benign positional paroxysmal vertigo." *Id.* At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 34. ALJ Janney then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently.  He can sit (with normal breaks) for a total of six hours in an eight-hour workday.  He can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds.  He can occasionally balance, stoop, kneel, crouch, and crawl.

*Id.* at 35.

At step four, the ALJ found that Claimant was able to perform his past relevant work during the relevant time period. *Id*. at 42. Relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform his past relevant work as a security guard as generally performed, although not as the claimant actually performed the job.  *Id.* at 42-43. Accordingly, ALJ Janney concluded Claimant was not disabled. *Id.* at 43.

### IV.  Discussion

Claimant raises two issues in his brief, each of which is addressed, in turn, below.

#### A.  Residual Functional Capacity Did Not Include the Need for a Cane

Claimant first contends that the ALJ erred by not meaningfully addressing the evidence in the record that he needs a cane in order to stand and walk for prolonged periods.  [Dkt. 9 at

4

16.] This issue is critical, Claimant argues, because the VE said that his dependence on a cane would preclude him from performing the only light job he was otherwise capable of doing. *Id.* at 21.

"The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. § 416.945(a)(1). "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). When the hypothetical question "does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004).

The ALJ found that Claimant did not need a cane to ambulate because

> the medical evidence of record shows that on as early as May 28, 2020, he was able to he walked [sic?] 150 feet without a cane although with slight antalgic gait noted. This was shortly after the surgery. Thus, he walked 144 feet more than he alleged he could one year and six months later at the hearing on November 8, 2021. As there is no other evidence of worsening, his testimony is markedly inconsistent. Although the claimant testified that he has had the cane in the examination room at every single visit he has had, this is [not][3] supported in the medical evidence of record. The medical evidence of record shows that although on November 25, 2020, Physician's Assistant McCandless noted that the claimant was ambulating with a cane, he had just a slightly unsteady gait. In addition, many notes in the record describe a normal or near normal gait and make no mention of a cane. While the claimant does have a prescription for a quad cane and lift chair as indicated in Exhibit 14E, and he was able to secure a cane prescription right before the hearing, as indicated in Exhibit 13F, these are not medically necessary for reasons set forth above. The only reference of a cane is from November 25, 2020, when he asked his physician's assistant to write a medical opinion. At the hearing the undersigned asked why the prescription for the cane a few days before

---

[3] The context of this sentence indicates the ALJ meant to say use of a cane at every visit is not supported by the medical record.

>the hearing in Exhibit 13F if he already had a cane, and he said he was switching from a quad cane to a single point cane. However, this is not documented as medically necessary in the record. Although the claimant testified that he could lift no more than 5 pounds, and that the cane makes it hard to carry, the medical evidence of record show that he reported lifting chains and digging ditches.[4]

[Dkt. 5-2 at 39-40] (citations omitted). Claimant argues that the ALJ ignores medical evidence as well as mischaracterizes evidence in finding that Claimant does not need a cane to ambulate. [Dkt. 9 at 17-19.] The Commissioner responds that the ignored evidence consists only of subjective reports that are not supported by objective evidence, [Dkt. 11 at 9], and goes on to point out that the ALJ acknowledged much of the evidence to which Claimant cites. *Id.* at 10.

While the ALJ did acknowledge much of Claimant's subjective reports, acknowledgement is not enough. The ALJ must build a logical and accurate bridge between evidence and conclusion. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Here, the ALJ did not. To start, the ALJ states "many notes in the record describe a normal or near normal gait and make no mention of a cane. . . [t]he only reference of a cane is from November 25, 2020, when he asked his physician's assistant to write a medical opinion." [Dkt. 5-2 at 39.] This is patently incorrect, as indicated by the ALJ elsewhere in his opinion. *See id.* at 37 ("[C]laimant presented walking with a single point cane. He ambulated with a moderate limp, and he climbed on and off the examination table with mild difficulty.") The ALJ also ignored or failed to acknowledge the following evidence from Claimant's medical records: on June 4, 2020, Claimant was encouraged to use the cane, [Dkt. 5-6 at 71]; on June 25, 2020, Claimant is better but still has pain with **prolonged activity** and his gait

---

[4] The ALJ failed to acknowledge Claimant's hearing testimony that this medical note was inaccurate, [Dkt. 5-2 at 72-73], nor did the ALJ explain why he discredited Claimant's explanation.

is abnormal/unsteady, [Dkt. 5-6 at 83] (emphasis added); on June 28, 2020, Claimant's leg is stiff after a lot of activity and still has an abnormal gait, [Dkt. 5-6 at 85]; on July 1, 2020, Claimant has difficulty with **sustained** standing and walking activities, [Dkt. 5-6 at 90] (emphasis added); on November 24, 2020, Claimant had constant pain, limps with a cane, has decreased strength, [Dkt. 5-7 at 158]; on December 17, 2020, Claimant has chronic pain, loss of motion, and weakness, "obvious discomfort," walked with a single point cane, and ambulates with a moderate limp, [Dkt. 5-7 at 134]; on February 17, 2021, Claimant has chronic right hip pain, [Dkt. 5-7 at 160]; on September 15, 2021, Dr. Etherton stated that despite physical therapy, Claimant continues to have pain and lack of function in right hip, [Dkt. 5-7 at 153]; on September 23, 2021, Claimant had right hip pain with radiation down his knee, [Dkt. 5-7 at 176]; and on October 19, 2021, when prescribing a single use cane, NP Clark input a diagnosis of M25.55 pain in hip, other chronic pain, [Dkt. 5-7 at 179].

These records indicate the Claimant's pain often waxed and waned, which the ALJ also noted, [Dkt. 5-2 at 38], but the ALJ failed to recognize that Claimant's pain often increased as a result of increasing his daily activities or engaging in prolonged/sustained activity. Many of the instances the ALJ cites as proof that Claimant was able to do more than he alleged also coincided with an increase in pain or stiffness reported by Claimant. For example, the ALJ specifically noted:

> Although the claimant testified that he could only stand for two to three minutes without a cane and 15 minutes with it, the medical evidence of record shows that on June 29, 2020, the claimant had indicated that he was very active and on his feet a lot one day, and the next that he sat around due to being worn out (Ex. 6F at 23).

[Dkt. 5-2 at 38]. The ALJ clearly failed to recognize that the Claimant likely sat around and was worn out because he overexerted himself the day before. The ALJ relies heavily on Dr.

7

Blessinger's post-op notes in the summer of 2020, noting that Claimant could walk 150 feet without a cane but with an abnormal gait in May 2020, and also that Dr. Blessinger released Claimant to full activity in late June 2020. [Dkt. 5-2 at 39.] While both of these characterizations of the record are accurate, the ALJ's conclusion that "[a]s there is no other evidence of worsening, his testimony is markedly inconsistent," *id.* is simply wrong. As noted above, many medical records note that Claimant's pain and mobility worsened over the next year. Thus, the ALJ seemingly discounts Claimant's testimony based on an inaccurate characterization of his medical records, which cannot stand.

The ALJ ignored medical evidence indicating that Claimant's pain and mobility have worsened, often in direct correlation to Claimant's attempts to increase or prolong his daily activities. The ALJ also provided an explanation for discounting the need for a cane that is based on an inaccurate reading of the medical record and is even inconsistent with other portions of the ALJ's opinion. There is no logical bridge between the ALJ's reasoning and his conclusion that Claimant's use of a cane is not medically necessary. Thus, remand is required.

### B. Residual Functional Capacity Did Not Adequately Account for Vertigo

Claimant also argues that the ALJ "inexplicably assessed no resultant limitations in the residual functional capacity to account for Plaintiff's bouts of dizziness," rendering the RFC unsupported by the record and requiring remand. [Dkt. 9 at 22.] Claimant correctly notes that the ALJ recognized Claimant's right ear benign positional paroxysmal vertigo is a severe impairment, [Dkt. 5-2 at 31], but Claimant fails to recognize that the ALJ assessed "climbing and balancing limitations [to account for] the claimant's alleged vertigo. *Id.* at 42; *see also id.* at 35 ("He can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl.").

Nevertheless, the Court agrees with Claimant that the ALJ did not adequately support his assessed RFC limitation. Notably, the ALJ relied heavily on Dr. Corocan's and Dr. Sands' administrative medical finding in determining his RFC, changing it in "only the minor ways noted above, as the climbing and balancing limitations accounts for the claimant's alleged vertigo." [Dkt. 5-2 at 42.] Claimant notes correctly that the ALJ made these alterations on his own, without any medical review or input. In doing so, Claimant argues, the ALJ ran afoul of the Seventh Circuit's prohibition against "playing doctor." The Court agrees. The medical records provided to the state agency physicians did not include Claimant's vertigo diagnosis, which did not appear in medical records until June 2021, four months after Dr. Sands' opinion and eleven months after Dr. Corocan's opinion. *Id.* at 41-42. The ALJ expressly acknowledged that Claimant's recent medical records included a diagnosis for severe right ear benign positional paroxysmal vertigo but stated "the medical findings do not support the existence of limitations greater than residual functional capacity to perform light exertional work but with additional nonexertional postural limitations to address his alleged lower extremity pain and dizziness." *Id.* at 36. The ALJ simply was not qualified to determine that Claimant's medical records related to his vertigo supported a finding that he was capable of light work with occasional balancing and stooping but did not support Claimant's testimony about the extent of his symptoms.[5] Nor was the ALJ qualified to determine that the new medical evidence regarding Claimant's vertigo

---

[5] Claimant testified that he has to take medication for vertigo to help offset his symptoms, which occur "a couple times a week," both without a trigger and when he bends over. [Dkt. 5-2 at 65.] The ALJ failed to explore the effects of Claimant's vertigo on his ability to work, such as how long it takes for the medication to offset the symptoms, how well the medication works to offset symptoms, what movements might trigger symptoms, and other relevant questions.

would not have changed the state agency physicians' RFC assessments to include different or greater limitations for Claimant's vertigo.

Pursuant to Seventh Circuit precedent, the ALJ was required to obtain a medical opinion with regard to the import of the new diagnosis, rather than making that determination based on his own lay opinion. *See, e.g., Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (ALJ's failure to submit new MRI to medical scrutiny was fatal "since it was new and potentially decisive medical evidence") (citations omitted); *Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018); *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). This must be corrected on remand.

### V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED for further proceedings consistent with this Report and Recommendation.**

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 28 JUL 2023

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.