UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| HENRY W. G., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:22-cv-00133-MPB-CSW |
| ) | |
| KILOLO KIJAKAZI Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

**ENTRY AFFIRMING COMMISSIONER'S DECISION**

Plaintiff Henry G.[1] petitioned the court for judicial review of the Commissioner of Social Security Administration's ("SSA") final decision denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") filed on April 13, 2020, and March 5, 2020, respectively. The case was referred to Magistrate Judge Dinsmore for consideration. On July 28, 2023, Magistrate Judge Dinsmore issued a Report and Recommendation concluding that the Commissioner's decision should be reversed and remanded because it was not supported by substantial evidence. The Commissioner filed a timely objection to the Magistrate Judge's Report and Recommendation, which the Court now addresses.

**I.    FACTUAL BACKGROUND**

The ALJ's decision finding Plaintiff not disabled followed the required five-step evaluation process in 20 C.F.R. § 404.1520. Specifically, the ALJ found:

- At Step One, "claimant has not engaged in substantial gainful activity since April 7, 2020, the alleged onset date." (Docket No. 5-2 at ECF p. 31).

---

[1] To protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security review opinions. The Plaintiff will therefore be referred to by his last name.

- At Step Two, "the claimant has the following severe impairments: right hip fracture and degenerative arthropathy of the bilateral hips; right knee osteopenia and arthropathy; and right ear benign positional paroxysmal vertigo." (*Id.*).

- At Step Three, the ALJ found that the "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at ECF p. 34).

- After Step Three but before Step Four, the ALJ found the Plaintiff had the Residual Functional Capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, he can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. He can sit (with normal breaks) for a total of six hours in an eight-hour workday. He can stand and/or walk (with normal breaks) for a total of six hours in an eight-hour workday. He can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl." (*Id.* at ECF p. 35).

- At Step Four, the ALJ found the "claimant can perform past relevant work as a security guard" because it did not require activities precluded by the claimant's RFC. (*Id.* at ECF p. 42).

- Finally, the ALJ concluded that the claimant was not "under a disability, as defined in the Social Security Act, from April 7, 2020, through the date of this decision." (*Id.* at ECF p. 43).

## II.   STANDARD OF REVIEW

In reviewing the decision of an Administrative Law Judge ("ALJ"), the district court affirms if the ALJ's factual findings are supported by substantial evidence and there are no errors of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). The district court will also "determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions."

*Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). We confine the scope of our review to the rationale offered by the ALJ. *Tumminaro v. Astrue*, 671 F.3d 629, 632 (7th Cir. 2011).

When considering a party's specific objections to a Magistrate Judge's Report and Recommendation, the district court reviews those elements *de novo*, determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of error of law. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). *De novo* review requires a re-examination of the case with a fresh set of eyes and "an independent judgment of the issues." *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1210 (7th Cir. 1984). After review, the court is empowered to adopt, reject, or modify the recommendations of the Magistrate Judge. Fed. R. Civ. P. 72(b).

## III. ANALYSIS

In this appeal, Plaintiff argues that the ALJ's decision denying his benefits should be remanded based on two errors: (1) The ALJ's assessed RFC did not reflect the need for a cane or further restrict the claimant's ability to stand and walk, and (2) The ALJ's assessed RFC did not adequately account for the severe impairment of right ear benign positional paroxysmal vertigo. (Docket No. 9 at ECF pp. 16, 22).

### A. CANE USE

In his Report and Recommendation, Magistrate Judge Dinsmore accepted Plaintiff's argument that the ALJ erred by not meaningfully addressing the evidence in the record that he needs a cane to stand and walk for prolonged periods. Thus, Magistrate Judge Dinsmore concluded that the ALJ had not built "a logical and accurate bridge between evidence and conclusion." (Docket No. 15 at ECF p. 8). In response, the Commissioner argues that the

3

Magistrate Judge held the ALJ to too high a standard of articulation and misstated its decision. (Docket No. 16 at ECF p. 1). The Court agrees with the Commissioner.

The SSA has issued a ruling specifically addressing finding canes or hand-held assistance devices medically necessary:

> To find that a hand-held assistance device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185 (July 2, 1996).

There are several instructive Seventh Circuit precedents analyzing this social security ruling. In *Tripp v. Astrue*, the appellant argued that the ALJ had not sufficiently analyzed his need for a cane. 489 F. App'x 951, 955 (7th Cir. 2012). The court decided that while the record was full of references to the appellant's use of a cane, those references were "traceable to [plaintiff's] self-reports and to physicians' observations that he *presented* with an assistive device." *Id.* Additionally, a doctor's statement that the appellant needed a crutch lacked "the specificity necessary to determine whether this was the doctor's *medical* opinion or merely a restatement of what was told to him by [appellant]." *Id.* (emphasis in original).

A district court interpreting *Tripp* concluded that "the ALJ is required to address [hand-held assistive device] evidence when the claimant presents 'specific, unambiguous evidence of the circumstances in which the cane is medically necessary." *Collett-Brown v. Saul*, No. 1:19-CV-170, 2020 WL 1685717, at *8 (N.D. Ind. Apr. 6, 2020) (citing *Powers v. Colvin*, 2016 U.S. Dist. LEXIS 124929 at *19 (S.D. Ind. Aug. 25, 2016)). Where another plaintiff's provider ordered him a cane, the court agreed with the ALJ's finding that "the provider's treatment notes [were] insufficient to establish that it was necessary," *Michael L. v. Saul*, No. 1:19-CV-04627,

4

2020 WL 3529212, at *3 (S.D. Ind. June 30, 2020) because the doctor did "not elaborate on the specific situations for which the cane was needed or the basis for the need except by listing a diagnosis." *Id.* at *4. *See also Vivian M. v. Kijakazi*, No. 1:21-CV-00686, 2022 WL 4298264, at *9 (S.D. Ind. Sept. 16, 2022) (prescription did "not establish the specific circumstances that an assistive device might be medically required according to SSR 96-9p" and court found "ALJ did not need to seek medical input").

Conversely, the Seventh Circuit remanded a case when an ALJ ignored a cane prescription with a doctor's note describing repeated falls, reports of other doctors noting cane use, Plaintiff's use of a cane at her hearing, and her testimony about needing it. *Thomas v. Colvin*, 534 F. Appx. 546, 550 (7th Cir. 2013).

Here, the situation is more analogous to *Tripp* than *Colvin*. Plaintiff's nurse practitioner wrote him a cane prescription at his request. (Docket No. 5-2 at ECF pp. 73–74). The prescription read "use cane daily as needed to ambulate." (Docket No. 5-7 at ECF p. 179). The nurse practitioner's instruction does not make clear in which specific situations the cane was needed or the basis for the need, as the court said was necessary in *Michael L. v. Saul*. It is also unclear, just like the doctor's statement in *Tripp*, whether the nurse practitioner believed the cane was medically required or whether the prescription explanation represented a restatement of what she had been told by the Plaintiff. No. 1:19-CV-04627, 2020 WL 3529212, at *3 (S.D. Ind. June 30, 2020). Finally, while the record here has references to the Plaintiff's cane use, just like in *Tripp*, those references are traceable to Plaintiff's self-reports and to "physicians' observations that he *presented*" with a cane. *Tripp*, 489 F. App'x at 955.

Plaintiff argues that the ALJ ignored clinical observations of the Plaintiff's providers who observed his abnormal gait patterns. (Docket No. 12 at ECF p. 1). However, the ALJ's decision

5

cites multiple times to different clinician's reports about Plaintiff's gait and pain, (Docket No. 5-2 at ECF pp. 38, 39, 40), and explains how he weighed these observations in his decision-making. (Docket No. 5-2 at ECF pp. 38, 39, 40).

Thus, the Court finds that the ALJ supported his RFC analysis on cane use with substantial evidence.

### B. VERTIGO

Magistrate Judge Dinsmore also agreed with Plaintiff that the ALJ had not adequately supported his assessed RFC limitation regarding Plaintiff's vertigo, which had developed after the state agency physicians conducted RFC assessments. In response, the Commissioner argues that an ALJ is not required to submit new evidence to medical review where the evidence is unlikely to alter the reviewing physicians' findings. (Docket No. 16 at ECF p. 5). The Court agrees with the Commissioner.

ALJs confronted with "new and potentially decisive medical evidence" must submit that evidence to medical scrutiny, *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014), instead of succumbing "to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). This is because "an ALJ does not possess the requisite medical education or training to determine the significance of objective medical evidence." *RuthAnn G. v. Saul*, No. 2:20-CV-252, 2021 WL 2349671, at *6 (N.D. Ind. June 9, 2021). Consequently, the Seventh Circuit has been very critical of ALJ's who interpret medical studies or tests, especially MRI's, without engaging an expert opinion. *Akin v. Berryhill*, 887 F.3d 314, 317 (7th Cir. 2018). *See also Goins*, 764 F.3d at 680 (7th Cir. 2014*)*; *McHenry v. Berryhill*, 911 F.3d 866, 872 (7th Cir. 2018).

However, the Seventh Circuit has also stated that "the critical question in determining whether a [medical] opinion is outdated is whether the new evidence contains 'significant and new developments' that 'reasonably' could have changed the previous reviewing consultant's assessment." *Baptist v. Kijakazi*, 74 F.4th 437, 443 (7th Cir. 2023) (ALJ was correct when he did not get an updated medical assessment after a new aneurysm procedure because treating physician indicated the new MRI would not have altered the state consultants' RFC findings) (citing *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). In *Durham v. Kijakazi*, after a medical expert weighed the plaintiff's situation, the plaintiff went to the hospital for shortness of breath where her symptoms were treated with adjusted medication. 53 F.4th 1089, 1095 (7th Cir. 2022). Instead of attempting to independently interpret the medical tests, the ALJ in the case relied on the conclusions of the treating doctor and did not request a new assessment. *Id.* The court stated that this situation could not be "characterized as having presented 'new' developments . . . that require an additional opinion of a medical expert." *Id.* at 1096. Thus, although the claimant testified at her hearing that her dizzy spells continued, her testimony was not supported by the medical record and the ALJ's conclusion with related limitations was adequate. *Id.* at 1096.

Here, as noted in Plaintiff's briefing, Plaintiff's vertigo developed in June 2021. (Docket No. 9 at ECF p. 23). While the Plaintiff testified at his hearing that the vertigo still occurs "several times per week," the ALJ noted that Plaintiff attended five sessions of physical therapy and then discontinued after telling the doctor he had improved. (Docket No. 5-2 at ECF p. 39). The ALJ's assessment is specifically supported in the medical records: on July 1, 2021, Plaintiff's physician noted that "[p]atient states that he [is] on a trailer taking chains on and off and digging in a ditch without issues. Feels his balance is greatly improved." (Docket No. 5-7 at ECF p. 148).

On July 7, 2021, the physician noted that "patient only reports one episode of dizziness while working in the heat, but no room spins that he has previously experienced." (*Id.* at ECF p. 150). The ALJ also noted that during this time Plaintiff worked on a tractor, took chains on and off a trailer, dug a ditch, and worked in the heat. (*Id.*). Thus, the ALJ concluded that the vertigo was "not as severe as alleged," (*id.*), but the ALJ still accounted for it in the climbing and balancing limitations. (Docket No. 5-2 at ECF p. 42).

There is no evidence that the ALJ played doctor in his RFC assessment. Rather, the ALJ determined the RFC "based on all of the relevant medical and other evidence," reasonably concluded that Plaintiff's vertigo had improved as concluded by the treating doctor, and still accounted for the condition in his limitations. 20 C.F.R. § 404.1545(a). As in *Durham*, the Plaintiff's vertigo was treated by providers, and these providers noted that Plaintiff had discontinued treatment due to improvement. *Durham*, 53 F.4th at 1095. Also in line with *Durham*, although Plaintiff reported symptoms at his hearing, this testimony was not supported by the medical records and the ALJ's conclusion was supported by substantial evidence. *Id.* at 1096. Thus, because the ALJ's factual findings were supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and there is a logical bridge from the ALJ's evidence to his conclusions, this Court will treat the ALJ's conclusion as to Plaintiff's vertigo with deference. *Dixon*, 270 F.3d at 1176 (7th Cir. 2001).

## IV.    CONCLUSION

Having reviewed *de novo* Magistrate Judge Dinsmore's analysis and conclusions set forth in his Report and Recommendation, the Court **SUSTAINS** the Commissioner's objections on both issue one (cane use) and issue two (vertigo). Thus, the Court **AFFIRMS** the

Commissioner's decision denying Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income.

IT IS SO ORDERED.

Date: September 29, 2023

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Elaine Kuntz
Social Security Administration
elaine.kuntz@ssa.gov

Joseph R. Wambach
KELLER & KELLER
joe@wambachdisability.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov